UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ADVENTURE HARBOR ESTATES, LLC,                   CIVIL ACTION
ET AL.

VERSUS                                                               NO: 12-1848 C/W 13-142
                                                                            & 13-4925

MICHAEL A. LEBLANC, ET AL.                          SECTION: "A" (5)

## ORDER AND REASONS

The following motion is before the Court: **Motion for Summary Judgment (Rec. Doc. 161)** filed by Allstate Insurance Co. Plaintiffs Michael and Mary Kaye LeBlanc oppose the motion. The motion, noticed for submission on February 26, 2014, is before the Court on the briefs without oral argument. For the reasons that follow, the motion is DENIED.

### I.   BACKGROUND

These consolidated actions arise out of the attempted purchase of certain property owned by Forty Acre Corporation and/or Mary Kaye and Michael LeBlanc. The property at issue ("the Property") comprises approximately 80 acres located in Terrebonne Parish, Louisiana. The principals of defendant Forty Acre are defendants, Mary Kaye and Michael LeBlanc. The plaintiffs in the lead action (12-1848) are Adventure Harbor Estates, LLC, Steven Serafin, and William McCollough.

According to the complaint, in January 2008 Plaintiffs entered into a Land Purchase Agreement ("the Agreement") with Defendants for the purchase of the Property for $1,930,000.00. (Comp.¶ A(1) {12-1848}). The Agreement required the LeBlancs to give Adventure Harbor reasonable access to the Property to conduct inspections, tests, and studies. (*Id.* ¶ 6).

During the course of the negotiations, Plaintiffs advised Defendants that the financing company which was to provide the money to purchase the Property required a current

wetlands delineation to complete the analysis of the loan application. (*Id.* 7). Plaintiffs allege that the LeBlancs assured them that a wetlands delineation had already been performed, and that they would provide the appropriate documentation for the lender. (*Id.* ¶ 8). Plaintiffs claim that the LeBlancs repeatedly delayed producing the wetlands document and when they did produce it, the document was not a wetlands delineation. (*Id.* ¶¶ 8, 9). According to Plaintiffs, Defendants then resisted their requests for full access to the Property for the purpose of performing a complete wetlands study, and the lender eventually refused to allow the transaction to close. (*Id.* ¶ 9). Plaintiffs assert that they were unable to obtain financing because of Defendants' breaches of the Agreement and were damaged in excess of $2,000,000.00 when the deal fell through. (*Id.* ¶ 12). Based on the foregoing, Plaintiffs' first cause of action is for breach of contract. Plaintiffs allege that the LeBlancs acted outside the scope of their corporate authority and that the corporation was their "alter ego," rendering them personally liable on the breach of contract claim. (*Id.* ¶¶ A(1)-(2)).

 Serafin and McCollough each assert a second cause of action for defamation and malicious prosecution. The basis of this claim is that the LeBlancs filed criminal complaints against Serafin and McCollough accusing them of stealing nearly $1,000,000.00 from the LeBlancs in conjunction with the failed land deal. (Comp. ¶¶ B(2), V(2) {12-1848}).

 Prior to the filing of Civil Action 12-1848 in this Court, defendant Forty Acre filed for bankruptcy protection in this district (Bankr. Case No. 11-10074). Adventure Harbor, Serafin, and McCollough filed an adversary complaint (Adv. Pro. No. 12-1043) against Forty Acre in the bankruptcy proceedings. The allegations in the adversary complaint were nearly identical to those being asserted in Civil Action 12-1848. The Court granted Plaintiffs' motion to withdraw the reference to the bankruptcy court, and the adversarial complaint was allotted as Civil Action 13-142, which this Court then consolidated with Civil Action 12-1848.

Meanwhile the LeBlancs and Forty Acre/The Forty Acre Corporation Plan Trust[1] filed suit against Robert Morris Cook, Serafin, and McCollough in state court. Cook is alleged to have absconded with $900,000.00 in loan proceeds that he obtained by mortgaging a portion of the LeBlancs' property. The LeBlancs had transferred a portion of the Property to Cook and his corporation, C&R, so that Cook could confect a financing deal to enable Serafin and McCollough to purchase the entirety of the property. McCollough removed that suit to this Court as Civil Action 13-4925, which this Court then consolidated with the lead case.

During the course of the litigation the LeBlancs filed third party demands against Certain Underwriters at Lloyd's of London (Rec. Doc. 52) and Allstate Insurance Co. (Rec. Doc. 94). Allstate issued a homeowner's policy to the LeBlancs, naming as insureds Michael A. LeBlanc and Mary Kaye LeBlanc (*Id.* ¶ III). Allstate initially agreed to provide a defense under a reservation of rights. (*Id.* ¶ IV).

Via the instant motion Allstate now moves for summary judgment on the questions of coverage and its duty to defend. The crux of Allstate's argument is that the causes of action being asserted against the LeBlancs arise from business pursuits and/or intentional acts, which foreclose coverage under the policy. According to Allstate, the pleadings clearly and unambiguously preclude coverage so that Allstate has no duty to defend the LeBlancs. Accordingly, Allstate seeks to be dismissed from this case as a matter of law.

In opposition, the LeBlancs point out that Plaintiffs have sued them individually for conduct that allegedly kept the sale of the Property from coming to fruition. The LeBlancs argue that the policy's business pursuits exclusion should not apply when they are sued

---

[1] As noted above, Forty Acre filed for Chapter 11 bankruptcy protection prior to the commencement of litigation in district court. The Confirmation Order directed Forty Acre to transfer certain assets, including the Terrebonne Parish land and Forty Acre's causes of action, to The Forty Acre Corporation Plan Trust. (Rec. Doc. 1-2 {13-4925}).

individually. As for the intentional acts exclusion vis à vis the defamation claim, the LeBlancs argue that Allstate should not be able to use this exclusion to evade coverage in a situation where the LeBlancs themselves might have been guilty of a felony had they not contacted law enforcement about Plaintiffs' possible involvement with the fraudulent scheme to abscond with the loan proceeds.

## II.  DISCUSSION

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (*citing Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (*citing Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (*citing* Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (*citing SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

It is a fundamental tenet of Louisiana law that an insurer's duty to defend its insured against suits is broader than its obligation to provide coverage (indemnification for damage claims). *See, e.g., Henly v. Phillips Abita Lumber Co.*, 971 So. 2d 1104, 1109 (La. App. 1st Cir.

2007) (*citing Yount v. Maisano*, 627 So. 2d 148, 153 (La. 1993)); *Alombro v. Salman*, 536 So. 2d 764, 766 (La. App. 5th Cir. 1988) (*citing Meloy v. Conoco, Inc.*, 504 So. 2d 833 (La. 1987)). The duty to defend, unlike the ultimate issue of coverage for liability, is determined solely by the factual allegations of the injured plaintiff's petition. *Alombro*, 536 So. 2d at 766. Pursuant to the "eight-corners rule," the insurer must look solely to the four corners of the plaintiff's petition and to the four corners of its policy to determine whether it owes a duty to defend. *Henly*, 971 So. 2d at 1109 (*citing Vaughn v. Franklin*, 785 So. 2d 79 (La. App. 1st Cir. 2001)). The duty to defend is triggered unless the allegations in the complaint unambiguously exclude coverage under the policy. *Alert Centre, Inc. v. Alarm Protection Servs., Inc.*, 967 F.2d 161, 163 (5th Cir. 1992) (*citing Meloy*, 504 So. 2d at 838). Thus, assuming the factual allegations of the petition to be true, if there could be both 1) coverage under the policy, and 2) liability to the plaintiff, then the insurer must defend the insured regardless of the outcome of the suit. *Henly*, 971 So. 2d at 1109 (*citing Prestage v. Clark*, 723 So. 2d 1086, 1092 (La. App. 1st Cir. 1998)). Moreover, if the complaint alleges a single claim against the insured that is covered by the policy, then the insurer must defend the entire lawsuit, even those claims clearly excluded from coverage. *Id.* (*citing Montgomery Elev. Co. v. Bldg. Eng'g Servs. Co.*, 730 F.2d 377, 382 (5th Cir. 1984).

  For purpose of evaluating the possibility of coverage under the policy, several important principles of Louisiana law apply. First, an insurance policy is a contract between the insured and the insurer and it has the effect of law between the parties. *Hudson v. Jager Bomb*, LLC, 107 So. 3d 712, 715 (La. App. 2d Cir. 2012). Because an insurance policy is a contract, the rules established for the construction of written instruments apply to contracts of insurance. *Id.* The parties' intent, as reflected by the words of an insurance policy, determines the extent of coverage, and the intent is to be determined in accordance with the

5

plain, ordinary, popular sense of the language used in the policy, unless the words have acquired a technical meaning. *Id.* (*citing Washington v. McCauley*, 62 So. 3d 173 (La. App. 2d Cir. 2011)).

Second, the insurer has the sole burden of establishing that an exclusion to coverage applies. *Veuleman v. Mustang Homes, LLC*, 110 So. 3d 572 (La. 2013) (*citing Blackburn v. Nat'l Union Fire Ins. Co.*, 784 So. 2d 637, 641 (La. 2001)). Moreover, when an exclusion has an exception to it that would allow coverage, the insurer relying on the exclusion has the burden of proving that the exception is *not* met. *Id.*

Next, when a policy of insurance contains a definition of any word or phrase, its definition is controlling. *Smith v. Reliance Ins. Co.*, 807 So. 2d 1010, 1020 (La. App. 5th Cir. 2002) (*citing Zanca v. Breaux*, 590 So. 2d 821, 824 (La. App. 4th Cir. 1991)). When the definition is susceptible to more than one reasonable interpretation, it is ambiguous and must be construed in favor of coverage. *Id.* (*citing McCarthy v. Berman*, 668 So. 2d 721, 726 (La. 1996)). Finally, a policy exclusion must be clearly stated and any ambiguity as to the applicability of a policy exclusion must be interpreted in favor of coverage. *Mistich v. Weeks*, 107 So. 3d 1, 6 (La. App. 3d Cir. 2012) (*quoting La. Maint. Servs., Inc. v. Certain Underwriters at Lloyd's*, 616 So. 2d 1250, 1252 (La. 1993)).

With these principles in mind the Court turns its attention to the "four corners" of Allstate's policy and the "four corners" of Plaintiffs' complaint against the LeBlancs. Allstate has identified (Rec. Doc. 161-3 at 5) the pertinent insuring provision of its policy:

> ***Losses We Cover***
> We will pay all sums arising from the same loss which an **insured person** becomes legally obligated to pay as damages because of **bodily injury** or **property damage** covered by this part of the policy.

(Allstate Exhibit 19, ALL 00613) (emphasis in original).

Allstate does not argue that the claims being asserted against the LeBlancs fall outside

of this insuring agreement. Thus, the possibility of coverage *vel non* turns on the policy's various exclusions. Allstate argues that two of the policy's exclusions are triggered and preclude the possibility of coverage under the facts alleged. The first is the "intentional acts" exclusion:

> We do not cover any **bodily injury** or **property damage** which may reasonably be expected to result from the intentional or criminal acts of an **insured person** or which is in fact intended by an **insured person**.

(Allstate Exhibit 19, ALL 00613) (emphasis in original). The second exclusion is the "business pursuits" exclusion:

> We do not cover any **bodily injury** or **property damage** arising out of the **business** pursuits of an insured person. **We** do cover:
>
> a)   activities normally considered non-**business** . . . .

(Allstate Exhibit 19, ALL 00614) (emphasis in original). The policy defines "business" in pertinent part as "any trade, profession or occupation . . . . *Id.* at ALL 00602.

Serafin's and McCollough's defamation claims against the LeBlancs are based on the LeBlancs filing criminal complaints against Serafin and McCollough accusing them of conspiring to steal $1,000,000.00. (Rec. Doc. 24 at ¶¶ B(2), V(2)). Both plaintiffs were charged with a felony as a result of the LeBlancs' complaints and they claim numerous elements of damages as a result of the criminal cases against them. Allstate's arguments of privilege notwithstanding, the LeBlancs face potential liability on this claim.

As for the potential for coverage, the Court finds Allstate's arguments in support of applying the two exclusions to the defamation claim to be wholly unpersuasive *in the context of its duty to defend.* Allstate's argument for applying the intentional act exclusion is that the LeBlancs intended to have Serafin and McCollough arrested, which would undoubtedly cause them damages. Allstate's policy does not define "intentional" yet Allstate's position suggests that "intentional" would mean the same thing as "voluntary". (Rec. Doc. 161-4, Allstate

Memorandum in Support at 7). While common sense would dictate that one who files charges with the district attorney would intend for an arrest to occur, it does not necessarily follow that any type of intentional injury was intended—the type of intentional injury that an insured should not be allowed to inflict with impunity knowing that his insurer will "pay the piper" for the damages. *See, e.g., Alombro*, 536 So. 2d at 766 (explaining the concept of "intentional" injury). Many voluntary acts, such as driving a car, can lead to unintentional and unforeseen injuries but those acts do not automatically become "intentional" for purposes of a policy exclusion. For purposes of ultimately determining coverage for liability, Allstate may very well be able to meet its burden of proving the applicability of the intentional act exclusion but on the basis of the pleadings alone the possibility of coverage cannot be rejected outright.

Allstate's arguments for applying the business pursuits exclusion to the defamation claim are likewise unpersuasive. The policy's definition of "business" controls, yet nothing in Plaintiffs' complaint suggests that the LeBlancs' dealings with selling the land involved "any trade, profession or occupation." Allstate's contention that Michael LeBlanc's sole employment since 1994 had been with Forty Acres, (Rec. Doc. 161-3, Allstate's Undisputed Facts ¶ 21), is based on facts learned via discovery, not on anything in the complaint, and of course this contention says nothing regarding Mary Kaye's employment and whether the business pursuits exclusion would apply to her.[2] Moreover, the business pursuits exclusion has an exception for activities normally considered non-business. Under Louisiana law Allstate has the burden of proving that this exception to the business pursuits exclusion is not

---

[2] Michael LeBlanc admits that his sole employment since 1994 has been with Forty Acre as its president and manager. (Rec. Doc. 174-1, Responses to Allstate's Undisputed Facts). Thus, it will be difficult for him to obtain escape the business pursuits exclusion when coverage is ultimately determined.

met. *See Veuleman*, 110 So. 3d at 641. Meeting with the local law enforcement authorities to report a crime would arguably seem like an activity normally considered non-business in nature.

In sum, because the policy and the complaint do not foreclose the possibility of coverage, at least as to the defamation claim, and certainly not the possibility of liability, Allstate's duty to defend is triggered. Therefore, Allstate owes the LeBlancs a defense for all claims asserted in the action, including those for which coverage might ultimately be unavailable. Allstate's motion for summary judgment is DENIED as to the duty to defend.

The motion is likewise DENIED as to coverage because the Court finds the coverage issue to be premature and/or incapable of being determined as a matter of law. For instance, the applicability of the intentional act exception may very well turn on findings by the trier of fact regarding the LeBlancs' intent behind certain acts.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 161)** filed by Allstate Insurance Co. is **DENIED**.

April 9, 2014

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE